IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PAMELA ENARI and
LAWRENCE LEFKOWITZ,          :
                             :
                             :
        Plaintiffs,          :
                             :
    v.                       :      3:24-CV-01101
                             :      (JUDGE MARIANI)
                             :
BAKHODIR DAVRANOV,           :
BEK EXPRESS, INC., and       :
KAMUNA EXPRESS, INC.         :
                             :
        Defendants.          :

MEMORANDUM OPINION

I.      INTRODUCTION & PROCEDURAL HISTORY

In this negligence action, plaintiffs Pamela Enari and Lawrence Lefkowitz

("Plaintiffs") seek to hold the defendants Bakhodir Davranov ("Davranov"), BEK Express, Inc

("BEK"), and Kamuna Express, Inc ("Kamuna") (and together, "Defendants") liable in

negligence for their alleged injuries sustained as a result of a motor vehicle accident.

Pending before the Court are three motions for summary judgment.

In the first motion, Kamuna seeks summary judgment claiming that the Graves

Amendment, 49 U.S.C. § 30106, precludes the imposition of vicarious liability against it and

that the Plaintiffs direct negligence claims fail. (Doc. 26). In the second motion, BEK moves

for partial summary judgment, claiming that the direct negligence claims raised by Plaintiffs

fail because BEK has admitted it is vicariously liable for its agent Mr. Davranov's

negligence. (Doc. 28). In the third motion, Mr. Davranov, BEK and Kamuna each seek

partial summary judgment dismissing Plaintiffs' request for punitive damages. (Doc. 30). For the reasons that follow, the motions will be granted and trial on the remaining claims will be scheduled.

On or about June 7, 2024, Plaintiffs filed this negligence action in the Court of Common Pleas of Lackawanna County. (Doc. 1-2)  Defendants removed the action to this Court on July 3, 2024. (Doc. 1). In Counts I, III, and III of the Complaint, Plaintiff Enari brings a negligence claim against Mr. Davranov, BEK, and Kamuna respectively. (Doc. 1-2, ¶¶ 25-29, 30-35, 36-41). In Counts IV, V, and VI, Plaintiff Lefkowitz brings a negligence claim against Mr. Davranov, BEK, and Kamuna respectively. (Id., ¶¶ 42-46, 47-52, 53-58).

On July 10, 2024, Defendants filed a motion to dismiss, motion to strike and a motion for a more definite statement, which the Court denied on November 8, 2024. (Doc. 13). On January 16, 2026, Kamuna moved for summary judgment and BEK and Mr. Davranov moved for partial summary judgment. (Docs. 26, 28, 30). This matter has been fully briefed and is ripe for disposition.[1]

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

Kamuna and BEK have each submitted "Statements of Material Facts" (Docs. 27, 29), as to which they each submit that there is no genuine issue or dispute for trial.

---

[1]      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount in controversy exceeds $75,000. Plaintiffs are citizens of the Commonwealth of Pennsylvania (Doc. 1, ¶¶ 6(a), 6(b)), and Defendants are citizens of the State of New York. (Id., ¶¶ 6(c), 6(d), 6(e)).

Kamuna, BEK, and Mr. Davranov have also submitted a joint "Statement of Material Facts" regarding punitive damages. (Doc. 31). Plaintiffs have submitted a response to each of the Defendants' statements. (Docs. 35, 36, 37). The following facts are undisputed, unless otherwise noted.

### A. Kamuna's Statement of Material Facts.

The motor vehicle accident that is the subject this litigation occurred on July 6, 2022, on Interstate 80 West, in Stroudsburg Borough, Monroe County, Pennsylvania. (Doc. 27, ¶ 1). The Police Crash Report identified Kamuna as the owner of a 2017 Freightliner tractor bearing New York license plates and Mr. Davranov as the driver at the time of the accident. (Id., ¶ 2). The Police Crash Report also identified Kamuna as the owner of a Great Dane semi-trailer that was attached to the tractor driven by Mr. Davranov at the time of the accident. (Id., ¶ 3). At the time of the accident, BEK was leasing the 2017 Freightliner tractor from Kamuna. (Id., ¶ 4). The parties dispute whether Kamuna and BEK are "totally separate and distinct legal entities" and further dispute whether Kamuna leases trucks to other trucking companies.[2] (Id., ¶¶ 5-6). Kamuna has separate lease agreements for each truck it leases. (Id., ¶ 7).

---

[2] Plaintiffs note that "Defendant Kamuna leased around ninety (90) vehicles" to BEK and that Kamuna's owner is a childhood friend of BEK's owners. (Doc. 37, ¶ 5). Plaintiffs further represent that BEK is the only company that Kamuna leases vehicles to, and that BEK picks up the vehicles it leases from Kamuna from a property Kamuna and BEK share in New York. (Id.). Plaintiffs further note that while Mr. Tukhlimurdov did testify that he leases trucks to trucking companies other than BEK, elsewhere in his deposition he stated that he doesn't "work with others." (Id., ¶ 6) (citing Ex. A at 20:18-21:4). The Court notes that an Uzbek language translator was necessary during the depositions of Mr. Tukhlimurdov and Mr. Davranov.

Kamuna's Corporate Designee, Sardor Tukhlimurodov, testified that before Kamuna leases a vehicle for the first time, "he would demand the lessee add the vehicle to insurance, then he would send the lease agreement, and they both would sign it, and the vehicle would have to be returned in the same condition it was delivered at the start of the lease." (Id., ¶ 8). Mr. Tukhlimurodov further testified that he does not know "which specific rules, internal safety regulations, or safety policies BEK has, or what drivers they use, or what cargo they transport." (Id., ¶ 9). He testified that he knows BEK is a good company, they are safe and make payments on time, and that he trusts BEK.[3] (Id., ¶ 10).

Mr. Tukhlimurodov testified that he inspects the vehicles that Kamuna leases before delivery and after they are returned. (Id., ¶ 11). He does not inspect the vehicles during the duration of the lease. (Id.). He further testified that he performs no maintenance of the vehicles during the life of the lease. (Id., ¶ 12). Mr. Tukhlimurodov denied any relationship between Kamuna and Mr. Davranov and testified that he does not personally know Mr. Davranov or any other drivers employed by BEK.[4] (Id., ¶ 13). In the Answer, "Defendants admitted that Defendant Davranov was the agent of Defendant BEK and that he was

---

[3] Plaintiffs admit that Mr. Tukhlimurodov testified as such, but dispute whether BEK is a good or safe company. (Doc. 37, ¶ 10).

[4] Plaintiffs admit that Mr. Tukhlimurodov testified as such, but dispute that there is no relationship between Kamuna and Mr. Davranov. (Doc. 37, ¶ 13). They note that "Defendant Davranov works for Defendant BEK and Defendant BEK is the only company that Defendant Kamuna leases trucks to," and, as a result, Kamuna and Mr. Davranov "have a relationship through Defendant Davranov's status as an agent for Defendant BEK." (Id.) (citing Ex. A at 20-21).

operating the aforementioned tractor-trailer under BEK's Federal Motor Carrier Authority at the time of the subject accident." (*Id.*, ¶ 14). Defendants specifically denied any relationship between Mr. Davranov and Kamuna. (*Id.*). According to Kamuna, there are no facts to support Plaintiffs' claim that Mr. Davranov was operating under the authority of Kamuna at the time of the accident.[5] (*Id.*, ¶ 15).

## B. BEK's Statement of Material Facts.

The motor vehicle accident that is the subject this litigation occurred at approximately 2:14 p.m. on Wednesday, July 6, 2022, on Interstate 80 West, in Stroudsburg Borough, Monroe County, Pennsylvania. (Doc. 29, ¶ 1). It was daylight, the road surface was dry, and there were no adverse weather conditions. (*Id.*, ¶¶ 2-3). The posted speed limit on Interstate 80 West in the area of the accident was 50 mph. (*Id.*, ¶ 4).

Ms. Enari was the operator of a 1998 Honda Accord occupied by a passenger, co-Plaintiff Mr. Lefkowitz. (*Id.*, ¶ 5). The Honda Accord was traveling on Interstate 80 West, near mile marker 306, in the right travel lane at an estimated speed of 50 mph at the time of the accident. (*Id.*, ¶¶ 5-6). Defendant Davranov was operating a tractor-trailer owned by Kamuna and leased to his employer, Defendant BEK, which was traveling on Interstate 80

---

[5]     Plaintiffs dispute this statement of fact, asserting that Mr. Davranov "is an employee of" BEK. (Doc. 37, ¶ 15). Plaintiffs represent that: (1) Kamuna leases trucks to BEK, and only BEK; (2) Kamuna believes that BEK has a strong safety record; (3) Kamuna and BEK's owners are childhood friends who attended school together in Uzbekistan; (4) BEK uses Kamuna's trucks because it has drivers and no trucks and Kamuna uses BEK because it has trucks but no drivers; and (5) BEK picks up trucks from a facility used by both BEK and Kamuna and this location is where Mr. Davranov's trip began on July 6, 2022. (*Id.*) (citing Ex. A at 15-16; Ex. B at 20:25-21:6; Ex. C at 43:11-20).

West, near mile marker 306, in the left travel lane. (*Id.*, ¶ 7). The tractor-trailer was traveling at an estimated speed of 50 mph at the time of the accident. (*Id.*, ¶ 8).

As Mr. Davranov was attempting to merge from the left travel lane to the right travel lane, his vehicle struck Plaintiffs' vehicle, causing Plaintiffs to lose control of the vehicle, which then struck a concrete barrier on the left side of the left travel lane. (*Id.*, ¶ 9). Mr. Davranov testified that the accident occurred "due to his failure to see Plaintiffs' vehicle traveling next to his vehicle in the right lane in his blind spot at the time he was attempting to change lanes from left to right, resulting in an impact between the two vehicles."[6] (*Id.*, ¶ 10). At the time of the accident, Mr. Davranov had a valid commercial driver's license ("CDL"). (*Id.*, ¶ 11). Mr. Davranov's CDL has never been suspended or revoked. (*Id.*, ¶ 12). Mr. Davranov testified that he was not using his cell phone at the time of the accident.[7] (*Id.*, ¶ 13). Mr. Davranov "had no problems operating his truck due to the weather on the day of

---

[6]     Plaintiffs admit that Mr. Davranov testified as such, but dispute what caused the accident. (Doc. 35, ¶ 10) ("By way of further response, the accident was caused by Defendant Davranov negligently, carelessly, recklessly, grossly, and wantonly changing lanes. Defendant Davranov attempted to merge into the left lane without adequate clearance and as a result violently struck Plaintiffs' vehicle. The force of the impact caused the Plaintiffs vehicle to strike the concrete barrier on the left side of the left travel lane. After striking the concrete barrier the Plaintiffs struck the aforementioned tractor-trailer for a second time before coming to a final uncontrolled rest in the right lane of travel facing east bound. The Plaintiffs' vehicle sustained disabling damage as a result of this crash."). Plaintiffs cite the Police Crash Report and portions of their Complaint in support of their denial.

[7]     Plaintiffs admit that Mr. Davranov testified as such, but dispute that he was not using his cellphone. (Doc. 35, ¶ 13). "Defendant BEK provided no evidence, outside of Defendant Davranov's own testimony to support their conclusion. Likewise, Defendant Davranov testified at his deposition that he keeps a cellphone and Bluetooth device on him while he drives." (*Id.*) (citing Ex. C at 33:11-25). Plaintiffs further note that in his response to interrogatories, Mr. Davranov indicated that he did not recall his cell phone number or the name of the carrier but was able to identify both at his deposition. (*Id.*).

the accident." (*Id.*, ¶ 14). He further "had no mechanical problems with the truck on the day of the accident and he did not identify any issues with the truck at the time of his pre-trip inspection that day." (*Id.*, ¶ 15).

Ms. Enari testified that she never saw the tractor-trailer any time prior to the accident.[8] (*Id.*, ¶ 16). She further testified that she "did not even know what had impacted her vehicle or where the point of impact occurred until sometime later, after the vehicles had come to final rest in the roadway."[9] (*Id.*, ¶ 17). The parties dispute whether or not Ms. Enari has "personal knowledge or evidence to support the numerous conclusory allegations of negligent, careless, and reckless conduct attributed to Defendant Davranov in the Plaintiffs' Complaint."[10] (*Id.*, ¶ 18). Mr. Lefkowitz likewise testified that he has no personal knowledge of Mr. Davranov's pre-accident conduct.[11] (*Id.*, ¶ 19). According to Defendants, "Plaintiff Lefkowitz only briefly noticed Defendants' truck traveling behind the Plaintiffs' vehicle shortly

---

[8]     Plaintiffs admit that Ms. Enari testified as such, but dispute the assertion that Ms. Enari is at fault for the accident. (Doc. 35, ¶ 16).

[9]     Plaintiffs admit that Ms. Enari testified as such, but dispute the assertion that Ms. Enari is at fault for the accident. (Doc. 35, ¶ 17).

[10]     Plaintiffs dispute this statement of fact, (Doc. 35, ¶ 18), noting that Ms. Enari "has extensive personal knowledge and evidence regarding what happened in the accident as she recounted to the Pennsylvania State Police" and her interview with Pennsylvania State Police is in the Police Report. (*Id.*) (citing Ex. A).

[11]     Plaintiffs admit that Mr. Lefkowitz testified as such, but dispute the assertion that Defendants are not responsible for the accident. (Doc. 35, ¶ 19).

before the impact."[12] (*Id.*, ¶ 20). They further claim "[i]t was not until their vehicles were at a final rest and Defendant Davranov was standing outside of his truck apologizing to both of them for causing the accident that Mr. Lefkowitz actually became aware of what happened." (*Id.*).

The investigating Pennsylvania State Police Trooper did not suspect Mr. Davranov of having used drugs or alcohol prior to the accident and his physical condition appeared normal. (*Id.*, ¶ 21). BEK's Corporate Designee, Oibek Rakhmonov, testified that Mr. Davranov's employment as one of BEK's drivers started in 2021. (*Id.*, ¶ 22). He also testified regarding BEK's hiring process generally, which involves performing "a check of the driver's Motor Vehicle Record; send to insurance; call the driver to office for formal interview; complete driver application; review company rules; provide the driver with BEK's Safety Rules/Safety Policy; have the driver sign all paperwork; send the driver for pre-employment drug test; when a negative drug test is received, a driving test is performed; and if all of the foregoing is done properly, BEK will hire the driver."[13] (*Id.*, ¶ 23).

---

[12] Plaintiffs dispute the facts alleged in Paragraph 20 of BEK's Statement of Material Facts. (Doc. 35, ¶ 20) (citing Ex. A; Ex. E at 14:7-17:3).

[13] Plaintiffs admit that Mr. Rakhmonov testified as such, but dispute that this thorough hiring process was done when hiring Mr. Davranov. (Doc. 35, ¶ 23). Plaintiffs note that Mr. Davranov "testified to receiving at least four traffic citations including multiple prior to working" for BEK and that BEK left a section regarding Mr. Davranov's driving license blank on his application form and that Mr. Davranov did not disclose all of his prior citations "on his application to work for BEK when prompted to do so." (*Id.*). (citing Ex. C at 15:18-24:10, 27:7-30:19; Ex. F).

Mr. Rakhmonov testified that he was with Mr. Davranov at the time of his driving test and that a road test examination form was completed in connection with the test. (*Id.*, ¶ 24). "This form is kept for the duration of the employment and then for one or two years after the driver leaves." (*Id.*). The documents in Mr. Davranov's Driver File would include his application, license, medical card, social security information, drug test results, and Motor Vehicle Record.[14] (*Id.*, ¶ 25). Mr. Rakhmonov also testified that Mr. Davranov provided him with a copy of his driver's license at the time he applied for employment with BEK, (*Id.*, ¶ 26), and that he called the prior employers listed on Mr. Davranov's application to inquire about his driving and employment history prior to hiring him.[15] (*Id.*, ¶ 27). And he testified that Mr. Davranov "was an excellent driver and there were no issues with his driving during the road test examination."[16] (*Id.*, ¶ 28).

BEK had weekly safety meetings with its drivers, including Mr. Davranov, which were performed by the Safety Directors to review issues like speeding, citations, and inspections.

---

[14] Plaintiffs admit that Mr. Rakhmonov testified as such, but dispute that these documents are actually in the file, noting that Mr. Davranov never disclosed his driver license on his application to work for BEK. (Doc. 35, ¶ 25).

[15] Plaintiffs admit that Mr. Rakhmonov testified as such, but dispute that these documents are actually in the file, noting that Mr. Davranov never disclosed his driver license on his application to work for BEK. (Doc. 35, ¶ 26). Plaintiffs further admits that Mr. Rakhmonov testified as such, but dispute that he called all of Mr. Davranov's prior employers, noting that Mr. Davranov "left off several companies that he drove for in the ten years prior to driving for Defendant BEK on his application to drive for Defendant BEK." (Doc. 35, ¶ 27).

[16] Plaintiffs admit that Mr. Rakhmonov testified as such, but dispute that Mr. Davranov's is an excellent driver, noting several driving violations he was cited for prior to the accident. (Doc. 35, ¶ 28).

(*Id.*, ¶ 29). The safety meetings were conducted through the Telegram app and safety materials were sent to the drivers. (*Id.*, ¶ 30). When the drivers opened the materials, it would be tracked by the Telegram app and BEK would be notified. (*Id.*). Mr. Rakhmonov testified that documents related to the Telegram meetings Mr. Davranov attended likely would have been deleted within 2-3 months after his employment ended. (*Id.*, ¶ 31). He further testified that all of BEK's drivers are required to use electronic logs, and the logs are kept for six months post-termination. (*Id.*, ¶ 32). BEK, however, "does not have any logs for Mr. Davranov at this time." (*Id.*, ¶ 33).

BEK has admitted that Mr. Davranov was negligent in his operation of the tractor-trailer, that he caused the subject motor vehicle accident, and that BEK is vicariously liable for Mr. Davranov's negligent conduct. (*Id.*, ¶ 34). Defendants specifically denied Plaintiffs' allegations of recklessness. (*Id.*). Plaintiffs have produced no evidence that Mr. Davranov was under the influence of drugs or alcohol prior to, or at the time of, the accident. (*Id.*, ¶ 35). The parties dispute, however, whether Mr. Davranov was fatigued at the time accident and whether Mr. Davranov "had some propensity to operate commercial motor vehicles at too great a speed, while distracted and/or fatigued, or otherwise in violation of the Federal Motor Carrier Safety Regulations and the statutes and regulations of the Commonwealth of Pennsylvania."[17] (*Id.*, ¶¶ 36, 39). The parties further dispute whether there is evidence

---

[17]     Plaintiffs dispute the allegations contained in Paragraph 36 of BEK's Statement of Material Facts. (Doc. 35, ¶ 36). They note that Mr. Davranov "testified that he has a history of driving while he was tired which has led to at least one traffic citation in the past, relating to a 2019 incident in Ohio" and that Mr. Davranov had been driving for three and a half to four hours before the accident occurred. (*Id.*) (citing Ex. C

supporting the contention that Mr. Davranov was unfit or unqualified to operate the tractor-trailer involved in the accident.[18]  (*Id.*, ¶ 38).  The parties agree, however, that there is no evidence that there were any mechanical issues with the tractor-trailer involved in the accident.  (*Id.*, ¶ 37).

### C.  Defendants' Statement of Material Facts Regarding Punitive Damages.

Defendants have filed a joint Statement of Material Facts seeking partial summary judgment dismissing Plaintiffs' requests for punitive damages.   (Doc. 31).  The joint Statement contains factual assertions almost identical to those set forth in BEK's Statement of Material Facts.  Indeed, Plaintiffs' response to the joint Statement contains admissions and denials that are nearly verbatim to their admissions and denials in their response to BEK's Statement of Material Facts.  *Compare* (Doc. 31, ¶¶ 1-27), *with* (Doc. 36, ¶¶ 1-27); *compare* (Doc. 29, ¶¶ 1-39), *with* (Doc. 35 ¶¶ 1-39).  As such, the Court will not repeat the statement of facts and Plaintiffs' admissions and denial here.

### III.                    STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR,* 549

---

at 24:2-10; 46:8-12).  Plaintiffs further claim that while BEK required its drivers to use electronic logs at the time of the accident, BEK did not audit those logs.  (*Id.*) (citing Ex. I at 63:4-67:23).

[18]      Plaintiffs dispute these allegations, noting that Mr. Davranov "had at least four separate citations as a driver in Pennsylvania, Georgia, Ohio, and Missouri" and that these incidents "include times when he was an employee of BEK." (Doc. 35, ¶ 38) (citing Ex. C at 15:18-24:10, 27:7-30:19).

F.3d 219, 223 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV.    ANALYSIS

In the Complaint, Plaintiffs brings six counts of negligence, seeking to impose direct and vicarious liability against the Defendants. (Doc. 1-2). Because this is a diversity action

and Plaintiffs asserts only state law claims, the Court will apply Pennsylvania substantive

law. *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v.*

*Tompkins*, 203 U.S. 64, 78 (1938)).

To establish a cause of action for negligence under Pennsylvania law, the plaintiff

must allege (1) a duty or obligation recognized by law requiring the defendant to abide by a

standard of care to protect against unreasonable risks, (2) the defendant failed to conform

to that standard, (3) a causal connection between the defendant's conduct and the resulting

harm and (4) the plaintiff suffered actual damage or loss. *R.W. v. Manzek*, 585 Pa. 335,

346, 888 A.2d 740, 746 (2005). There are three pending motions for summary before the

Court. (Docs. 26, 28, 30). The Court will address each in turn.

## A. **Kamuna's Motion for Summary Judgment**.

Kamuna seeks summary judgment dismissing Plaintiffs' negligence claim alleged in

Counts III and VI of the Complaint. (Doc. 26). Kamuna claims it is entitled to summary

judgment on both Plaintiffs' direct negligence claims and their claims for vicarious liability.

Specifically, Kamuna claims that Plaintiffs' vicarious liability claim must fail pursuant to the

Graves Amendment, 49 U.S.C. § 30106(a). (Doc. 32 at 8-10). Kamuna also seeks

summary judgment dismissing Plaintiffs' direct negligence claim against it, asserting that

Plaintiffs have failed to produce any evidence in support of that claim. (*Id.* at 10-14).

Plaintiffs oppose Kamuna's motion. (Doc. 39).

**The Graves Amendment**

The Graves Amendment to the Safe, Accountable, Flexible and Efficient Transportation Equity Act of 2005 "precludes the imposition of liability of an entity engaged in the trade and business of renting or leasing motor vehicles solely as a result of the ownership of the vehicle in question." *Buzzard v. Flagship Carwash of Port St. Lucie, Inc.*, 2009 WL 10685457, at *2 (M.D. Pa. Sept. 28, 2009) (Vanaskie, J.) *aff'd*, 397 Fed. App'x 797 (3d Cir. 2010). The Graves Amendment provides, in relevant part:

> **(a) In general.**--An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if--
> > **(1)** the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> > **(2)** there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a).

As the text of the Graves Amendment makes clear, the Amendment "precludes imposition of liability on a company 'engaged in the trade or business of renting or leasing motor vehicles' based *solely* on the company's ownership interest in the at-issue vehicle."[19] *Petit v. Penske Tr. Leasing Corp.*, 2019 WL 1571067, at *3 (M.D. Pa. Apr. 11, 2019) (quoting 49 U.S.C. § 30106(a)(1)) (emphasis in original). The Graves Amendment does

---

[19]   "Legislative history confirms Congress intended the Graves Amendment apply to vicarious liability claims." *Schalalbeo v. Damco Distr. Servs.*, 657 F. Supp. 3d 687, 693 (E.D. Pa. 2023).

not, however, "protect entities accused of negligence or criminal wrongdoing."[20] *Id.* (citing 49 U.S.C. § 30106(a)(2)). In other words, where the claims at issue do not seek to impose vicarious liability on an entity "engaged in the trade or business of renting or leasing motor vehicles" based solely on ownership of the motor vehicle, the Graves Amendment does not apply. *Id.*

Plaintiffs seek to hold Kamuna directly and vicariously liable in negligence. Kamuna seeks summary judgment on its affirmative defense of the Graves Amendment. According to Kamuna, "[t]he undisputed facts of record demonstrate that" it "was merely the owner and lessor of the subject-tractor trailer" and, as such, the Graves Amendment precludes Counts III and VI to the extent seek to impose vicarious liability. (Doc 32 at 9). Plaintiffs claim that the Graves Amendment is inapplicable on the summary judgment record. Specifically, Plaintiffs claim that Kamuna is still liable for its own negligent conduct and that its negligent entrustment claim is not prohibited by the Graves Amendment. (Doc. 39 at 12-13).

To the extent Plaintiffs seek to hold Kamuna vicariously liable solely based on its ownership of the subject motor vehicle, and not its own negligence, those claims are preempted by the Graves Amendment and summary judgment will be granted to Kamuna. *Buzzard*, 2009 WL 10685457, at *2. It is undisputed that Kamuna is the owner of the subject motor vehicle and "is engaged in the trade or business of renting or leasing motor

---

[20]     49 U.S.C. § 30106(a)(2) is also known as "the savings clause." *Buzzard*, 2009 WL 10685457, at *2.

vehicles." 49 U.S.C. § 30106(a)(1). However, Plaintiffs seek to impose joint venture liability on Kamuna and further brings a negligent entrustment claim against Kamuna. Negligent entrustment claims are not preempted by the Graves Amendment. *See Knecht v. Balanescu*, 2017 WL 4573796, at *11 (M.D. Pa. Oct. 13, 2017) ("This Court agrees that the Graves Amendment cannot be read to exclude claims of negligent entrustment, when the facts giving rise to the negligent acts of the lessor pose an unreasonable risk of harm to others."). However, the summary judgment record viewed in the light most favorable to Plaintiffs fails to raise a genuine dispute of material facts at to Kamuna's liability for either negligent entrustment, joint venture liability, or any other direct or vicarious negligence claims alleged in the Complaint. For the reasons that follow, Kamuna's motion will be granted in its entirety and Counts III and IV will be dismissed.

## Joint Venture

Plaintiffs seek to hold Kamuna liable for BEK and Mr. Davranov's negligence pursuant to joint venture theory of liability under Pennsylvania law. According to Plaintiffs, there is sufficient record evidence to preclude summary judgment on its claim that Kamuna is liable as a joint venturer with BEK. Plaintiffs note, without any citation to applicable case law, that:

> Here, there is evidence of record that Defendant Kamuna and Defendant BEK were engaged in joint venture. Specifically, Kamuna leases around ninety (90) vehicles to Defendant BEK. Defendant Kamuna's owner, Sardor Tukhlimurdov, was a childhood friend of Defendant BEK's owner Oibek Rakhmonov. Defendant BEK is the only company to which Defendant Kamuna leases vehicles. Defendant BEK picks up the

vehicles it leases from Defendant Kamuna from a property that Defendant BEK and Defendant Kamuna share in Medford, New York.

The corporate representative for Mr. Tukhlimurdov, testified that he only works with Defendant BEK and that he does not 'work with others.'  Mr. Tukhlimurdov further testified that he does not lease trucks to anybody other than Defendant BEK. Defendant Davranov works for Defendant BEK and BEK is the only company to which Defendant Kamuna leases trucks.  As a result, Defendant Kamuna and Defendant Davranov have a relationship through Davranov's status as agent for Defendant BEK. Defendant BEK uses Defendant Kamuna's trucks because Defendant BEK has drivers but no trucks and Defendant Kamuna uses Defendant BEK's drivers because Defendant Kamuna has trucks, but no drivers employed.  Defendant BEK picks up the trucks from a facility that is used by both Defendant BEK and Defendant Kamuna.  The Long Island location that Defendant BEK and Defendant Kamuna share is where Defendant Davranov's trip began on July 6, 2022.

Therefore, both parties made a contribution to the joint venture either by skills, services, or materials with the tractor, trailer, and actual work.  Further, the profits were shared with a right to mutual control.  As such, genuine issues of material fact remain as to whether the parties were engaged in a joint venture and summary judgment should be denied.

(Doc. 39 at 18-19).  The Court disagrees.

Assuming without deciding that the Graves Amendment does not preclude Kamuna's liability, Plaintiffs negligence claims based on a joint venture theory of liability nevertheless fails.[21]  The party asserting the existence of a joint venture bears the burden of proving it.

---

[21]    Based on the summary judgment record before the Court, it appears Plaintiffs' joint venture claim against Kamuna is likely preempted by the Graves Amendment.  *See Buzzard*, 2009 WL 10685457, at \*2 ("Assuming, however, that Pennsylvania law would impose such a nondelegable duty, the Graves Amendment operates to preempt such law because the nondelegable duty doctrine is simply another way of imposing vicarious liability.").  Plaintiffs' attempt to impose joint venture liability on Kamuna appears to be just another way of seeking to hold Kamuna vicariously liable for the alleged negligence of BEK or Mr. Davranov. In other words, the joint venture theory of negligence advanced by Plaintiffs is simply a way of "imposing liability based solely upon ownership, i.e., liability that does not depend upon the fault of the vehicle owner." *Id*.  The Graves Amendment likely precludes such claims based on the summary judgment record before the Court because Plaintiffs seek to impute liability on the lessor of the motor vehicle that caused the accident solely as a result of its ownership of the motor vehicle.  See *id*. at \*3 ("The Graves Amendment preempts

*McRoberts v. Phelps*, 391 Pa. 591, 138 A.2d 438, 443-44 (1958).  Under Pennsylvania law,

a joint venture has four essential elements:

> (1) Each party to the venture must make a contribution, not necessarily of capital, but
>
>     by way of services, skill, knowledge, material, or money;
>
> (2) Profits must be shared among the parties;
>
> (3) There must be a joint proprietary interest and right of mutual control over the
>
>     subject matter of the enterprise; and
>
> (4) Usually, there is a single business transaction rather than a general and continuous
>
>     transaction.

---

state law to the extent that liability would be imposed on lessors of vehicles solely as a consequence of their ownership interests in the vehicles.") (collecting cases).

A joint venture theory of liability is similar to vicarious liability, in that both impute the negligence of one party to another based on their relationship, despite one party not being directly negligent.  *See, e.g.,* *Beavers v. West Penn Power Co.*, 436 F.2d 869, 872 (3d Cir. 1971) ("In order ***to impute negligence*** under the controlling Pennsylvania law the plaintiff was required to establish a joint venture.") (emphasis added); *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1181 (Pa. 1992) (noting that "[v]icarious liability" is "sometimes referred to as imputed negligence"); *Ciotola v. Star Transp. & Trucking, LLC*, 481 F. Supp. 3d. 375, 387 (M.D. Pa. 2020) ("Once a party satisfies the test for a joint venture, the torts committed by one joint adventurer may be imputed upon other joint adventurers."); *Santiago v. Eastern Savings Bank, FSB*, 2011 WL 710216, at *3 (E.D. Pa. Feb. 28, 2011) ("The Court concludes there is no genuine issue of material fact as to ESB's position that it did not enter into a joint venture with Common.  Thus, vicarious liability cannot be imposed against ESB on that ground."); *Stecyk v. Bell Helicopter Textron, Inc.*, 1998 WL 784195, at *1 (E.D. Pa. Nov. 9, 1998) ("As a general rule, parties to a joint venture are mutually and vicariously liable for injuries or harms caused by venture."); *Cont'l Aircraft Sales v. McDermott Bros. Co.*, 316 F. Supp. 232, 234 (M.D. Pa. 1970) ("Generally, in order to impute civil liability from one person to another it must be shown that a principal and agency relationship exists between the parties and that the tortious conduct arose within the scope of the agency relationship, or employment.  Similarly, liability may be imputed from one to another if it shown that the parties were engaged in a joint venture or enterprise.") (citation omitted).

*Id.* at 439. "The absence of even one element is fatal to the existence of a joint venture." *Odyssey Contracting Corp. v. Hercules Painting Co., Inc.*, 2022 WL 5237196, at \*5 (W.D. Pa. Sept. 2, 2022) (citation omitted).

As an initial matter, nowhere in the Complaint do Plaintiffs allege any facts regarding the existence of a joint venture or plead any of the required elements under Pennsylvania law. (Doc. 1-2); *see Streamline Bus. Servs., LLC v. Vidible, Inc.*, 2015 WL 3477675, at \*5-6 (E.D. Pa. June 2, 2015) (analyzing why complaint plausibly alleged a joint venture); *see also Fuhrman v. Maywer*, 2024 WL 1604603, at \*11 (M.D. Pa. Apr. 12, 2024) (in negligence action brought by Plaintiffs' counsel, holding that plaintiff failed to plausibly allege the existence of a joint venture). It is well-settled that a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 Fed. App'x 157, 160 (3d Cir. 2008) (non-precedential); *see also Evans v. Sentry Wellhead*, 764 F. Supp. 3d 298, 307 n.1 (W.D. Pa. 2025) (the plaintiff "failed to plead any facts in his complaint" to allege a specific claim and plaintiff "cannot raise a new claim in his brief that was not pled in his complaint").

In *Fuhrman*, Judge Kane granted the defendants' motion to dismiss, holding that the plaintiff failed to plausibly allege the existence of a joint venture. *See Fuhrman*, 2024 WL 1604603, at \*14 ("[T]he Court finds that Plaintiffs have failed to plead the first three elements of a joint venture."). The allegations of the existence of a joint venture in the

20

dismissed complaint in *Fuhrman* far exceed any allegations in the Plaintiffs' Complaint.[22]    In

fact, the Complaint here does not contain a single allegation of a joint venture between

Kamuna and BEK, or allegations of facts from which a joint venture could be reasonably

inferred.  (Doc. 1-2)

A joint venture "must arise from a contractual basis," although the "contract need not

express but may be implied from the acts and conduct of the parties." *McRoberts*, 391 Pa.

*see also Duquesne Light Co. v. Woodland Hills Sch. Dist.*, 700 A.2d 1038, 1055 (Pa.

Commw. 1997) ("Under Pennsylvania law, a joint venture is an association of persons or

corporations who by contract, express or implied, agree to engage in a common enterprise

for their mutual profit.") (citing *Richardson v. Walsh Constr. Co.*, 334 F.2d 334, 336 (3d Cir.

1964)).  "The relationship between those in a joint venture is fiduciary in nature; upon each

co-adventurer are imposed obligations of loyalty, fairness, good faith and full disclosure

---

[22]    For example, in *Fuhrman* Judge Kane found "[a]s to the first element of a joint venture—requiring the contribution of capital, services, skill, knowledge, materials or money—Plaintiffs FAC simply states '[u]pon information and belief . . .' the moving Defendants, along with Defendant Richards and the Tapscott Defendants, 'each contributed capital, services, skill, knowledge, materials, vehicles, and/or money in furtherance of a joint venture." *Fuhrman*, 2024 WL 1604603, at *12. "Here, Plaintiffs have not alleged the requisite factual information evincing an intent to create a joint venture." *Id.*  Judge Kane further found, "[a]ssuming *arguendo*, that Plaintiffs plausibly pleaded facts satisfying the first element of a joint venture, the Court finds that Plaintiffs allegations are insufficient to plead the second element of a joint venture." *Id.* at *13.  "As an initial matter, the word 'profits' does not appear in Plaintiffs' FAC, nor do Plaintiffs state any facts supporting the existence of a profit sharing agreement." *Id.*  "Here, similar to Plaintiffs' pleading with regard to the first element, there is merely a recitation of the text of the third element of a joint venture.  Plaintiffs' FAC does not discuss any factual allegation that make their theoretically viable claim plausible." *Id.* at *14.

The plaintiffs thereafter flied a new complaint and Judge Kane adopted Magistrate Judge Camoni's report and recommendation, granting the Tapscott's defendants' motion for summary judgment. *Fuhrman v. Mayer*, 2026 WL 880596, at *4 (M.D. Pa. Mar. 31, 2026) (finding "not one iota of evidence that B&C contributed to a joint venture, shared profits with Tapscott, or possessed a joint proprietary interest in or the right of mutual control over the log transportation enterprises.").

toward his fellow co-adventurers." *McRoberts*, 391 Pa. at 603.  Each party to a joint venture is "an agent and a principal of the joint venture" and "a principal is liable to third parties for the frauds, deceits, concealments, misrepresentation, torts, negligent acts, and other malfeasances of his agent." *Fuhrman*, 2024 WL 1604603, at *11.

Plaintiffs' joint venture claim fails because there was no joint venture between Kamuna and BEK as a matter of law.  The existence of a joint venture "depends upon what the parties intended in associating together." *Keeler v. Int'l Harvesters Used Truck Ctr.*, 317 Pa. Super. 244, 247, 463 A.2d 1176 (1983).  Although not dispositive, the Lease provides that Kamuna and BEK are "independent contractors" and "[n]o agency, partnership, or employment relationship is created."[23]  (Doc. 27-2 at 1).  BEK and Kamuna are separately incorporated corporations, and there is insufficient evidence from which a reasonable jury could infer from the parties' course of conduct that Kamuna and BEK intended to create a joint venture.  *See Wilkoski v. B&T Express, Inc.*, 2022 WL 847068, at *21 (W.D. Pa. Mar 22, 2022) ("We cannot ignore these corporate forms which are evident in the record, and there is no genuine dispute in that regard.  A party cannot use the joint venture theory as an end-run around the burdens imposed on a party seeking to disregard the corporate form.").

---

[23]     "A joint venture is a legal entity in the nature of a partnership." *Dorsey Trailers, Inc. v. N.L.R.B.*, 134 F.3d 125, 130 (3d Cir. 1998).  "It engages in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution, and is memorialized in contract." *Id.*; *see also Wilkins*, 480 A.2d at 1144 ("A joint venture partakes in many ways of a partnership, the principal difference being that it usually, though not necessarily, applies to a single transaction instead of being formed for the conduct of a continuing business.").

Both the terms of the Lease and parties' course of conduct fail to raise a genuine dispute of material facts regarding the existence of joint venture.

"In Pennsylvania the law is clear that in order for a joint venture to come into existence, there must be a showing of a joint proprietary interest *and* a right of mutual control of the subject matter of the enterprise." *Wilkins v. Heebner*, 480 A.2d 1141, 1144 (Pa. Super. 1984). "Without evidence of a shared proprietary interest and right of control, there can be no joint venture." *Id.* at 1145. "If proprietary control is vested in only one of two parties, the other may be an agent or an employee of the former, but there is no joint venture." *Id.* "What constitutes a joint venture is a question of law; but whether a joint venture exists is generally a question of fact." *Id.* at 1144.

The summary judgment record fails to establish sufficient facts from which a reasonable jury could infer that Kamuna and BEK held a joint proprietary interest of mutual control over the alleged trucking enterprise. *Wilkins*, 480 A.2d at 1145 (no joint venture where "there is not one iota of evidence" that the alleged joint venturers "shared a joint propriety interest or right of control over the leasehold estate"); *see also Allen v. Foxway Transp., Inc.*, 705 F. Supp. 3d 297, 315 (M.D. Pa. 2023) (granting summary judgment on plaintiff's joint venture theory of liability where the plaintiff failed to meet his "burden to show that there are material facts on which he could ultimately prevail on his claim").

The Lease between Kamuna and BEK explicitly provides that, "[f]or the full duration of this Lease, Lessee shall have **exclusive possession, control, and use** of the

23

Equipment and shall assume **complete responsibility** for its operation, dispatch, and safety compliance." (Doc. 27-2 at 1) (emphasis in original). Although Plaintiffs note that Kamuna only leases its trucks to BEK, which Kamuna denies, this dispute of fact does is not material in that it does not establish that Kamuna and BEK intended to create a joint venture or that Kamuna and BEK shared a joint propriety interest and right of mutual control over the trucking enterprise. Moreover, the mere fact that the owners of Kamuna and BEK are childhood friends from Uzbekistan does not change the Court's joint venture analysis. *See US Coal Corp. v. Dinning*, 222 A.3d 431, 441 (Pa. Super. 2019) ("The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency."). "The fact that two or parties agree to work jointly and in collaboration or collectively does not necessarily mean that they are engaged in a joint venture." *Odyssey Contracting*, 2022 WL 5237196, at *6 (citations omitted).

Nor is there any evidence that Kamuna and BEK jointly shared profits. "The element of profit sharing in a joint venture requires that profits be joint and not several." *Digital Encoding Factory, LLC v. Iron Mountain Info. Mgmt., Inc.*, 660 F. Supp. 2d 608, 617 (W.D. Pa. 2009). Nowhere in the Complaint do Plaintiffs allege that Kamuna and BEK shared profits. Indeed, the word "profits" does not appear in the Complaint, and on this record no reasonable jury could find or infer that Kamuna and BEK intended to jointly share profits. Nothing in the summary judgment record suggests that Kamuna and BEK engaged in a single business transaction, rather than a series of transactions as a result of their

continuous business relationship. Accordingly, assuming without deciding that the Graves Amendment does not preclude Plaintiffs joint venture theory of liability against Kamuna, it fails on the merits because there is no evidence in the summary judgment record supporting this theory of liability and Plaintiffs cannot amend their Complaint in opposition to a motion for summary judgment. The Court will thus grant Kamuna's motion for summary judgment as to Counts III and VI to the extent these counts allege negligence based on vicarious liability, which is preempted by the Graves Amendment, or joint venture liability, which fails on its merits.[24]

## Negligent Entrustment

Plaintiff next seeks to hold Kamuna directly liable for the tort of negligent entrustment. As noted, the Graves Amendment does not preclude state law claims of negligent entrustment. See *Knecht*, 2017 WL 4573796, at *11 ("This Court agrees that the Graves Amendment cannot be read to exclude claims of negligent entrustment, when the facts giving rise to negligent acts of the lessor pose an unreasonable risk of harm to others."). "A negligent entrustment claim is not simply some form of vicarious liability." *Adames v. May Furniture, Inc.*, 2019 WL 8937042, at *4 (M.D. Pa. Nov. 26, 2019). Rather, it is a form of direct liability, as "liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his control." *Id.*; *see also*

---

[24]    Even if Plaintiffs' vicarious liability claims against Kamuna are not preempted by the Graves Amendment, they would fail on the merits because there is insufficient evidence for a reasonable jury to hold Kamuna vicarious liable for the torts of an employee of its independent contractor.

*Spencer v. Johnson*, 249 A.3d 529, 553 (Pa. Super. 2021) ("liability is imposed upon a defendant because of his or her own actions in relation to the instrumentality or activity under his or her control. The entrustor's liability is not dependent on, or derivative of, or imputed from the entrustee's actual liability for damages.") (internal citation and quotation marks omitted).

Pennsylvania courts have adopted the Restatement (Second) of Torts § 308. *Christiansen v. Silfies*, 446 Pa. Super. 464, 667 A.2d 396, 400 (1995). The Restatement defines the tort of negligent entrustment as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harms to others.

Restatement (Second) of Torts § 308. Accordingly, to prevail on a negligent entrustment claim Plaintiffs must show that Kamuna "(1) permitted a third party; (2) to operate its [vehicle] and (3) that [it] knew or should have known that the third party intended to or was likely to use the [vehicle] in such a way that would harm another." *Schneider Nat'l Carriers, Inc. v. Syed*, 2019 WL 183905, at *3 (M.D. Pa. Jan 14, 2019) (cleaned up). "The third element of negligent entrustment may be satisfied by showing that the defendant knew or should have known that the entrusted driver was an incompetent driver or intoxicated." *Id.* (collecting cases).

According to Plaintiffs, "there is ample evidence to support a claim for negligent entrustment against Defendant Kamuna." (Doc. 39 at 15). First, Kamuna "contracted with

Defendant BEK, and only Defendant BEK to lease their vehicles." (*Id.*). Moreover, Mr. Davranov "remained employed by Defendant BEK after he received multiple other traffic citations while working for Defendant BEK, including one in Georgia which he acknowledges he received because he was driving while tired."[25] (*Id.*). Further, BEK "does not audit the electronic logs of drivers to ensure that they are complying with the Federal Motor Carrier Safety Regulations and are not driving too long without taking a break in violation of the federal hours of service regulations." (*Id.* at 16). And Kamuna "continued to contract with Defendant BEK despite these safety failings meaning Defendant Kamuna's selection process of a business partner was insufficient and could not produce a full, thorough, and clear determination if Defendants BEK and Davranov were safe or not." (*Id.*)

The Court disagrees with Plaintiffs and will grant Kamuna's motion for summary judgment in its entirety. Based on the summary judgment record, no reasonable jury could conclude that Kamuna knew, or should have known, that either BEK or Mr. Davranov intended, or was likely to use the motor vehicle in such a manner to create an unreasonable risk of harm to Plaintiffs. *See Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 566-67 (E.D. Pa. 2004) ("Based on the record before us, we find that no reasonable jury could conclude that Wal-Mart knew, or should have known, that Bryan either intended or was likely to use the ammunition Wal-Mart sold to him to risk harm to anyone. As such, we must

---

[25] It is undisputed that the Georgia traffic citation occurred after the accident that is the subject of this litigation. (Doc. 29-2 at 15:18-21:5). Moreover, the record reveals that BEK hired Mr. Davranov is 2021 and his first accident with BEK was the accident that is the subject of this litigation.

27

grant the Motion for Summary Judgment with respect to Count II."); *see also Brown v. Brooks*, 2024 WL 4664806, at *3 (E.D. Pa. Nov. 4, 2024) ("Here, Plaintiffs have failed to establish the third element—that Penske knew or should have known that Mayflower would allow an allegedly incompetent driver to operate the Mayflower trucks.").

It is undisputed that a lease governed the relationship between Kamuna and BEK at the time of the subject motor vehicle accident.  (Doc. 27-2 at 1).  As set forth in the Lease, Kamuna and BEK are "independent contractors" and "[n]o agency, partnership, or employment relationship is created."  (*Id.*).  Kamuna, as Lessor, "is not a motor carrier with respect to loads moved by Lessee under this Agreement."  (*Id.*).  "For the full duration of this Lease, Lessee shall have **exclusive possession, control, and use** of the Equipment and shall assume **complete responsibility** for its operation, dispatch, and safety compliance."  (*Id.*) (emphasis in original).  The Lease provides that "[o]nly qualified, licensed drivers meeting Lessee's FMCSA, company, and insurance standard may operate the Equipment."  (*Id.*).  BEK, as Lessee, "is solely responsible and liable for the operation of the Equipment and for all claims, losses, and damages arising from its use during the Lease, including bodily injury, death, property damage, cargo loss, environmental/hazmat releases, civil penalties, and attorney fees."  (*Id.* at 3).

Initially, Plaintiffs negligent entrustment claim fails because the facts viewed in the light most favorable to Plaintiffs reveal that Kamuna "simply had no control" over the motor vehicle that caused the accident at the time of the accident and Kamuna "thus could not

have prevented" the accident from occurring. *Midgette*, 317 F. Supp. 3d at 568; *see also Wittrien v. Burkholder*, 965 A.2d 1229, 1233 (Pa. Super. 2009) (affirming dismissal of negligent entrustment claim where no evidence that entrustor "had the right to control" the dangerous instrumentality); *Congini by Congini v. Portersville Valve Co.*, 504 Pa. 157, 164, 470 A.2d 515 (1983) ("The appellee here had no right of control over Mark Congini's car, and we see no basis upon which to extend liability to the situation posited here."). "It is the right to control the [thing] rather than ownership that satisfies the control element under Section 308." *Rogers v. Thomas*, 291 A.3d 865, 886 (Pa. Super. 2023). While it is undisputed that Kamuna owned the subject motor vehicle, the summary judgment record fails to establish a genuine dispute of fact as to whether Kamuna had the right to control the subject motor vehicle at the time accident. In fact, the Lease explicitly provides that BEK, as lessee, had "exclusive possession, control, and use" of the subject motor vehicle at the time of accident. (Doc. 27-2 at 1). And there are no facts in the summary judgment record to suggest otherwise.

Aside from Kamuna's lack of contractual duty to control the subject vehicle at the time of the accident, Kamuna does not have a common law duty to exercise control over the agents or employees of its independent contractor like BEK and Mr. Davranov. *See Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 150, 189 A.2d 271 (1963) ("Ordinarily one who engages an independent contractor is not responsible for the acts of such independent contractor or his employees."). Nor did Kamuna, as Lessor, have a common law duty to

independently investigate the driving records of the employees hired by its independent contractors. *Knecht*, 2017 WL 4573796, at *11 ("Pennsylvania courts have not found an authoritative duty to investigate driver records owed by a lessor, unless the lessor affirmatively assumes responsibility from the lessee. Barring assumption, any duty to investigate the background of hired drivers remains with the lessee."). Nothing in the Lease or the summary judgment record indicates that Kamuna, as Lessor, affirmatively assumed responsibility for BEK, the Lessee, and BEK's agents or employees.

Furthermore, the disputed facts regarding whether Kamuna only leases its motor vehicles to BEK does not, contrary to the Plaintiffs assertions, establish Kamuna's liability for negligent entrustment on this record. Put simply, nothing in the summary judgment record could lead a reasonable jury to conclude that Kamuna knew, or should have known, that Mr. Davranov or BEK either intended or were likely to use the motor vehicle in such a manner as to create an unreasonable risk of harm to Plaintiffs.[26]  *See Blackson v. Matthews*, 2025 WL 818163, at *2 (E.D. Pa. Mar. 13, 2025) ("Plaintiff here provided no facts to suggest that Revolution and Salven knew or should have known that Matthews was going to use the semi-trailer in such a way to create unreasonable risk of harm to Plaintiffs. And

---

[26]    While Plaintiffs note that Mr. Davranov prior driving citations are sufficient to impose negligent entrustment liability on Kamuna, Mr. Davranov was an employee of BEK, not Kamuna. His prior driving citations do not establish a claim for negligent entrustment against Kamuna. *See Schneider Nat'l Carriers*, 2019 WL 183905, at *5 ("However, the fact that the driver was inexperienced or incompetent is alone insufficient to create liability under a theory of negligent entrustment; a rental company is liable for the actions of an incompetent driver only when it was aware or should have been aware that it was renting the vehicle to an incompetent driver.").

just as with Plaintiff's agency claim, an allegation of ownership is not enough to automatically hold a trailer owner liable for negligent entrustment."); *see also Brown*, 2024 WL 4664806, at *3 ("Here, Plaintiffs have failed to establish the third requirement—that Penske knew or should have known that Mayflower would allow an allegedly incompetent driver to operate the Mayflower trucks.  Plaintiffs rely on the longstanding relationship between Penske and Mayflower to argue that Penske had some control over Mayflower's choice of drivers.  This is nothing more than speculation, as the longstanding nature of the parties' relationship says nothing about what notice Penske had or should have had about Mayflower's drivers."); *Gutierrez v. Pell*, 2022 WL 1045525, at *2 (E.D. Pa. Apr. 7, 2022) ("Plaintiff has not pointed to any evidence to support the assertion that Christine had any knowledge that her son was likely to use her car in such a way as to cause this accident and there is no indication that any such evidence exists.  Therefore, summary judgment is appropriate."); *Prescott v. R&L Transfer, Inc.*, 2015 WL 418736, at *6 (W.D. Pa. Feb. 2, 2015) (granting summary judgment on negligent entrustment claim where there was no evidence in the record to suggest that owner "had any reason to suspect that Mead was an incompetent or unsafe driver").  Accordingly, because no reasonable jury could find Kamuna directly liable, the Court will grant Kamuna's motion for summary judgment in its entirety and will dismiss Counts III and VI.

## B. **BEK'S Motion for Partial Summary Judgment**.

BEK has admitted it is vicariously liable for its agent Mr. Davranov's negligence. (Doc. 14, ¶¶ 26, 31, 43, 48).  It moves for partial summary judgment, dismissing Plaintiffs' direct negligence claim alleged in Counts II and IV of the Complaint.  (Doc. 28).  BEK first claims it is entitled to summary judgment on Plaintiffs direct negligence claims because it has admitted it is vicariously liable for Mr. Davranov's negligence and there is no viable punitive damages claim.  (Doc. 33 at 15-17).  As such, BEK argues that Plaintiffs' direct negligence claims are not viable, and the Court must dismiss Counts II and IV to the extent they allege direct negligence liability.   Alternatively, BEK seeks summary judgment on Plaintiffs' direct negligence claims, asserting that Plaintiffs have failed to produce any evidence establishing that BEK's alleged direct negligence caused or contributed to the accident. (*Id.*, ¶¶ 17-19).  Plaintiffs oppose BEK's motion.  (Doc. 38).

Plaintiffs seek to hold BEK directly liable for negligent hiring and entrustment.[27] Federal district courts in Pennsylvania "have applied the majority rule and refused to allow claims for negligent entrustment, supervision, monitoring, and hiring to proceed when (1) the supervisor/employer admits that its employees were acting in the scope of his or her employment at the time of the accident *and* (2) the plaintiff does not have a viable claim for

---

[27]      Although Plaintiff advanced many theories of direct negligence against BEK in the Complaint, (Doc. 1-2, ¶¶ 33(a)-(t)), the parties only discuss negligent hiring and negligent entrustment in their briefs.  In any event, to the extent that Plaintiff seeks to hold BEK directly liable for negligent supervision, training, retention, maintenance, or the like, those claims fail for the same reasons Plaintiffs' negligent entrustment and hiring claims fails:  BEK's conduct, viewed in the light most favorable to Plaintiffs, does not warrant punitive damages under Pennsylvania law.

punitive damages against the supervisor/employer defendant." *Sterner v. Titus Transp., L.P.*, 2013 WL 6506591, at \*4 (M.D. Pa. Dec. 12, 2013) (emphasis in original) (collecting cases); *see also Gfroehrer v. Calice*, 2011 WL 5320712, at \*3 (M.D. Pa. Nov. 1, 2011) ("When there is no punitive damages claim, courts often dismiss the negligent entrustment claim when agency is admitted on the grounds that permitting it would allow for prejudicial evidence of prior driving history."). Because BEK has admitted it is vicariously liable for Mr. Davranov's negligence, the viability of Plaintiffs' direct negligence claims under the majority rule hinges on whether Plaintiffs have a viable claim for punitive damages against BEK. The Court finds Plaintiffs do not have a viable claim for punitive damages against BEK and will thus dismiss Counts II and IV to the extent they allege any cause of action for direct negligence against BEK.

Plaintiffs claim there are disputes of material fact as to BEK's "reckless and outrageous conduct" precluding summary judgment on their direct negligence claim against BEK. According to Plaintiffs:

> There are ample facts for the jury to find that Defendant BEK acted with the requisite state of mind to support a claim for punitive damages when Defendant BEK (1) hired Defendant Davranov despite Davranov not properly filling out his application and not providing Defendant BEK with all the required information; (2) neglected to contact all of Defendant Davranov's prior employers; and (3) knowingly employed Defendant Davranov despite his history of numerous traffic citations.

(Doc. 38 at 14). More specifically, Plaintiffs allege that:

> Here, the evidence demonstrates that Defendant BEK acted with reckless and conscious disregard for the rights and safety of motorist on the road. First, Defendant BEK hired Defendant Davranov despite the fact that he never disclosed his drivers

license on his application, neglected to list several past employers or explain gaps in employment on his application, and did not disclose several traffic citations he received in the past. Moreover, Defendant Davranov remained employed after he received multiple other traffic citations while working for Defendant BEK, including one in Georgia which he acknowledges he received because he was driving while tired. Further, Defendant BEK does not audit the electronic logs of the drivers to ensure that they are complying with Federal Motor Carrier Safety Regulations and are not driving too long in violation of the federal hours of services regulations without taking a break. . . . Moreover, Defendant BEK has not provided any evidence, and does not claim, that it called all the missing employers not listed on Defendant Davranov's application meaning that Defendant BEK's hiring process was insufficient and could not produce a full, thorough, and clear determination if Defendant Davranov was a safe driver or not. As such, BEK's hiring and entrustment of its tractor trailer to Defendant Davranov was reckless.

(*Id.* at 16-17).

As discussed, Federal district courts in Pennsylvania have applied the majority rule and "refused to allow claims for negligent entrustment, supervision, monitoring, and hiring when (1) the supervisor/employer admits that its employees were acting in the scope of his or her employment at the time of the accident *and* (2) the plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant." *Sterner*, 2013 WL 6506591, at *4 (collecting cases). Here, Plaintiffs do not have viable claim for punitive damages against BEK and thus their direct claims alleging negligent entrustment and hiring fail. While it is true that BEK could have done a more thorough investigation into its drivers prior to hiring them, or kept more thorough records on its drivers, it does not follow that BEK's conduct is sufficiently outrageous to impose punitive damages against BEK under

34

Pennsylvania law.[28]  *See Hutchison v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. 2005) ("Ordinary negligence, involving inadvertence, mistake or error of judgments will not support an award of punitive damages."), *aff'd*, 592 Pa. 38, 922 A.2d 890 (2007).

Under Pennsylvania law, punitive damages are appropriate on a negligence claim where the defendant's actions "are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct." *SHV Coal, Inc. v. Cont'l Grain Co.*, 526 Pa. 489, 493, 587 A.2d 702 (1991).  Reckless indifference may also support an award of punitive damages.  A defendant acts with reckless indifferent when he "knows, or has reason to know, . . . of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk." *Id.* at 494.  Because punitive damages are penal in nature, they "are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct." *Hutchinson ex rel. Hutchinson v. Luddy*, 592 Pa. 114, 870 A.2d 766, 770 (2005).  "The state of mind of the actor is vital.  The act, or failure to act, must be intentional, reckless or malicious." *Feld v. Merriam*, 506 Pa. 383, 396, 485 A.2d 742 (1984).

---

[28]    Although Plaintiffs take issue with BEK's document retention policy and its failure to produce relevant documents during discovery after receiving a document preservation letter, such as electronic driver logs, Plaintiffs never moved for sanctions or alleged spoliation before the Court.  Fed. R. Civ. P. 37; *see also Defrehen v. TJX Co., Inc.*, 2021 WL 5534700, at *1 n.1 (E.D. Pa. Aug. 16, 2021) ("If Plaintiff can prove spoliation, the appropriate remedy would be to move for sanctions against Defendant, rather than punitive damages.") (citations omitted).

In *Phillips v. Cricket Lighters*, the Pennsylvania Supreme Court set out the relevant

standard:

> Our case law makes it clear that punitive damages are an "extreme remedy"
> available in only the most exceptional matters. *See Martin v. Johns–Manville
> Corp.,* 508 Pa. 154, 494 A.2d 1088, 1098 n. 14. (Pa.1985), *rev'd on other
> grounds sub nom. Kirkbride v. Lisbon Contractors, Inc.,* 521 Pa. 97, 555 A.2d
> 800 (1989), *abrogation on other grounds recognized by Bert Company v. Turk,*
> 298 A.3d 44 (Pa. 2023). Punitive damages may be appropriately awarded only
> when the plaintiff has established that the defendant has acted in an
> outrageous fashion due to either "the defendant's evil motive or his reckless
> indifference to the rights of others." *Martin,* 494 A.2d at 1096; *see also
> Hutchison v. Luddy,* 870 A.2d 766, 770 (Pa. 2005) (finding that punitive
> damages may be appropriately awarded only when the plaintiff has established
> that the defendant has acted in a fashion "so outrageous as to demonstrate
> willful, wanton or reckless conduct"). A defendant acts recklessly when "his
> conduct creates an unreasonable risk of physical harm to another [and] such
> risk is substantially greater than that which is necessary to make his conduct
> negligent." *Id.* at 771 (citation omitted). Thus, a showing of mere negligence, or
> even gross negligence, will not suffice to establish that punitive damages
> should be imposed. *SHV Coal, Inc. v. Continental Grain Co.,* 526 Pa. 489, 587
> A.2d 702, 705 (1991). Rather, the plaintiff must adduce evidence which goes
> beyond a showing of negligence, evidence sufficient to establish that the
> defendant's acts amounted to "intentional, willful, wanton or reckless conduct."
> *Id.* at 704 (citation omitted).

*Phillips v. Cricket Lighters*, 883 A.2d 439, 445–46 (Pa. 2005).

The Pennsylvania Supreme Court consistently recognizes the importance of

discerning the mental state of the defendant when considering a claim for punitive

damages, stating in *Hutchinson*, that the Court had rejected a "reasonable man standard"

and "concluded that 'an appreciation of the risk [of harm] is a necessary element of the

mental state required for the imposition of [punitive] damages.'" *Hutchinson*, 870 A.2d at

771 (quoting *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097 n.12 (Pa. 1985)). Given

the necessity of showing that the act or failure to act was intentional, reckless, or malicious,

> a punitive damages claim in Pennsylvania must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.

*Hutchinson*, 870 A.2d at 772 (citing *Martin*, 494 A.2d at 1097-98).

> *Phillips* explains the plaintiff's burden when making a claim for punitive damages:

> What is clear from these cases is that there is a distinction between negligence and punitive damages claims, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim. This distinction is an important one. Damages awarded in a negligence action compensate a plaintiff for his or her losses. Punitive damages, in contrast, are not awarded to compensate the plaintiff for her damages but rather to heap an additional punishment on a defendant who is found to have acted in a fashion which is particularly egregious. *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, 713 A.2d 1127, 1129 (1998). Such a punishment should not be meted out to every defendant who is found to have acted negligently; rather, it should be reserved for those cases in which the defendant has acted in a particularly outrageous fashion.

*Phillips*, 883 A.2d at 446.

Viewing the facts and the inferences from those facts in the light most favorable to

the Plaintiffs, no reasonable jury could find or infer outrageous or reckless conduct on the

part of BEK sufficient to impose the "extreme remedy" of punitive damages under

Pennsylvania law.  Courts in Pennsylvania routinely grant employers like BEK's motion for

summary judgment and dismiss claims for punitive damages where, as here, the summary

judgment record fails to establish that the employer:  (1) had a subjective appreciation of the

37

risk of harm to which the plaintiff were exposed; and (2) acted, or failed to act, in conscious disregard of that risk.[29]  There is simply no evidence in the record for a reasonable jury to infer that BEK had a subjective appreciation of the risk of harm to which Plaintiffs were exposed and then acted, or failed to act, in conscious disregard of that risk.  More specifically, viewing the facts in the light most favorable to the Plaintiffs, BEK did not have a subjective appreciation of the risk that Mr. Davranov would change lanes without checking his mirrors and blind spots and acted, or failed to act, in conscious disregard of that risk.

BEK's alleged negligence in failing to fully investigate Mr. Davranov's driving and employment history prior to hiring him does not support an award of punitive damages.  It is undisputed that Mr. Davranov possessed a valid CDL and that his license has never been suspended or revoked.  (Doc. 29, ¶¶ 11-12).  It is also undisputed that Mr. Davranov was not speeding at the time of accident and there were no mechanical issues with the tractor-

---

[29]    *See, e.g., Galovich v. Morrissette,* 2024 WL 2962843 (M.D. Pa. June 12, 2024) (granting defendants' motion for partial summary judgment and dismissing claims for punitive damages against driver and employer); *Carson v. Tucker,* 2020 WL 4015244, at *4 (E.D. Pa. July 16, 2020) ("simple allegations limited only to a defendant failing to comply with traffic law are not sufficient for punitive damages."); *Elmi v. Kornilenko,* 2018 WL 1157996, at *5 (W.D. Pa. Mar. 2, 2018) (finding that imposing punitive damages on a defendant for passing another vehicle at seventy miles per hour contradicts the policy of limiting punitive damages to "outrageous" cases); *Felkner v. Werner Enter., Inc.,* 2014 WL 1013474, at *6 (E.D. Pa. Mar. 14, 2014) ("I conclude that Plaintiff's evidence fails to create a genuine issue of fact that would allow a reasonable jury to conclude that Werner's negligence in hiring, supervising, training, and entrusting Mr. Ziemba was so outrageous to justify an award of punitive damages."); *Achey v. Crete Carrier Corp.,* 2009 WL 9083282, at *6 (E.D. Pa. Mar. 30, 2009) ("Based on the evidence before the Court, Crete's hiring and retention of Gallman demonstrates, if anything, ordinary negligence involving a mistake of judgment that does not support a claim for punitive damages."); *Grosek v. Panther Transp., Inc.,* 2009 WL 427238, at *5 (M.D. Pa. Feb. 20, 2009) (granting partial summary judgment to employer of tractor trailer driver in negligence action and dismissing punitive damages claims, noting that "employing a driver who did not meet all the training requirements does not amount to reckless indifference to the clear possibility that such a driver would ignore basic traffic laws, run a red light and injure another driver").

trailer. (*Id.*, ¶¶ 4, 8, 15). Plaintiffs direct the Court to Mr. Davranov's deposition where he admitted to receiving several traffic citations. But most of those citations occurred ***after*** the accident that is the subject of this litigation and are therefore irrelevant to the claims at issue in this litigation.[30]

Plaintiffs also point to an accident and two traffic citations before Mr. Davranov was hired by BEK as proof of BEK's reckless conduct. "Evidence of past accidents or incidents cannot serve as a basis for punitive damages against an employer when there is no nexus between the driving violations and the conduct leading to the accident such that an employer would have a conscious appreciation of the risk." *Felkner*, 2014 WL 1013474, at *6 (collecting cases). Over five years before the July 2022 accident, Mr. Davranov had one, and only one, accident while driving his tractor-trailer in Missouri on January 17, 2017. (Doc. 29-2 at 27:7-30:19). He was not employed by BEK at that time. Mr. Davranov was criminally charged with reckless driving and the accident resulted in a civil suit. *Id.* The only evidence of what occurred during the accident was Mr. Davranov's own testimony, where he stated:

> So I was stopped at the traffic light at that day in Missouri on the highway. After that I was turning left on the highway, and my back trailer wheels not functioning—was not functioning properly at that time. So after that I just a little bit touched the other car with my wheels, that other car's wheels, and I was looking—after that I was looking for

---

[30]    Mr. Davranov received a traffic citation from Pennsylvania State Police as a result of the accident that is the subject of this litigation. He was ticketed for "Driving on Roadways Laned for Traffic," in violation of 75 Pa. C.S.A. § 3309. (Doc. 27-1 at 2). Following the accident, he received traffic citations in December 2022 in Georgia and in July 2024 in Allentown, Pennsylvania. (Doc. 29-2 at 15:18-21:5). Both these traffic citations appear to be the result of Mr. Davranov driving in the left lane of travel where tractor-trailers are prohibited, though no party has submitted these traffic citations to the Court.

the exit because I was a new driver at that time.  And after that the police stopped me and asked for my license, and I told them—I talked to the police, that I was confused. I was looking for the exit.  And the police officer took my driver's license and told me to follow him, and we followed him.  I followed him, and I was going after that police officer, and we went to the Walmart parking lot.  We went to the Walmart parking lot. So at the parking lot they arrested me, and that they put the hand craft [sic]-I was hand crafted [sic], and they arrested me at the parking lot.

(*Id.* at 28:8-25).

The Missouri accident lacks a sufficient causal and temporal nexus to the accident that is the subject of this litigation such that BEK could not have a conscious appreciation of the risk that Mr. Davranov would drive in the left lane of traffic and change lanes without looking in his mirrors and sideswipe another vehicle.[31]  *See Achey*, 2009 WL 9083282, at *5 ("As to Gallman's commercial driver record, there is no nexus between Gallman's commercial driving violations and his conduct on the day of the accident that would indicate Crete's conscious appreciation of the risk of Gallman experiencing fatigue while behind the wheel.") (collecting cases).  "Because the Court can find no evidence in the record indicating that these alleged violations were substantial factors in causing the accident, these violations are insufficient to justify an award of punitive damages." *Id.* at *7.  That same logic applies here.

In addition, Mr. Davranov received a traffic citation in Ohio on March 1, 2019, over three years before the accident.  (Doc. 29-2 at 24:2-10).  There is no evidence he was

---

[31]    Neither Plaintiffs nor Defendants submitted any expert evidence to the Court.

working for BEK at that time. No party submitted information on this citation and Mr. Davranov's deposition indicates the citation was for issues with the trailer itself, not his driving. (*Id.* at 24:5-10) ("The problem was with the trailer. The trailer was moving and shaking. So after that the police stopped me and give me the citation, and I was tired also. After this I went to the service plaza and took a rest, and it happened on the turnpike.").[32] Because "evidence of past accidents or incidents cannot serve as a basis for punitive damages against an employer when there is no nexus between the driving violations and the conduct leading to the accident such that an employer would have a conscious appreciation of the risk," *Felkner*, 2014 WL 1013474, at *6, the Court will grant BEK's motion for summary judgment because there is no nexus between Mr. Davranov's traffic citations and the accident that subject of this litigation such that BEK would have a conscious appreciation of the risk. Moreover, Plaintiffs' direct negligence claims against BEK must be dismissed under the majority rule, where, as here, Plaintiffs have no viable claim against BEK for punitive damages. *See Sterner*, 2013 WL 6506591, at *4 (federal district courts in Pennsylvania applying the majority rule "refused to allow claims for negligent entrustment, supervision, monitoring, and hiring when (1) the supervisor/employer admits that its employees were acting in the scope of his or her employment at the time of

---

[32] The statement from Mr. Davranov that he was tired does not establish he has a history of driving while tired sufficient to impose punitive damages on BEK. Nor is there any evidence, other than mere speculation, that Mr. Davranov was fatigued at the time of the accident.

the accident *and* (2) the plaintiff does not have a viable claim for punitive damages against the supervisor/employer defendant.") (emphasis in original).

However, the Court's analysis will not end with the application of the majority rule because several cases have espoused "a more nuanced analysis" of the availability of a direct negligence claim when agency is admitted, *Villagran v. Freightbull, Inc.*, 698 F. Supp. 3d 807 (E.D. Pa. 2023); *Zellers v. Ibrahim*, 2024 WL 1416503 (M.D. Pa. Apr. 2, 2024) (citing *Villagran*, 2023 WL 6690700, at *1).

Acknowledging the "well-established" rule set out above, *Villagran* questioned "a blanket rule that direct liability claims must always be dismissed unless the plaintiff can meet the onerous standard for punitive damages." 698 F. Supp. 3d at 811. In considering an approach distinct from that previously applied by United States District Courts in Pennsylvania, *Villagran* stated that

> dismissal of direct liability claims need not invariably follow from the preclusion of punitive damages. Instead, the issue should be addressed through the lens of Federal Rule of Evidence 403, under which probative value is weighed against unfair prejudice. It may be true that evidence in support of a direct claim for negligent hiring or training has a prejudicial impact on the rest of the case. But that hardly ends the analysis, given the adage that all relevant evidence is prejudicial in some respect or else it would not *be* relevant. In other contexts – including criminal cases where liberty is at stake – mere prejudice does not suffice to exclude evidence, but only unfair prejudice. Without the same balancing principles governing direct liability claims like those brought here, the practical effect of the majority rule is to create an inherent bias in favor of civil defendants, for which I can discern no logical reason or legal authority.

*Id.* Applying the identified balancing test to the facts of the case, *Villagran* found that

dismissal of the direct liability claim against the trucking company was warranted. *Id.* at 812.

The determination was based on the conclusion that

> [t]he evidence of corporate negligence on Freightbull's part does not just fail to
> meet the standard for punitive damages – it is minimal. The criticism leveled at
> Freightbull's in-house training program seems peripheral, and the charges that
> it failed to train drivers on pre-trip planning or conduct accident investigations
> are wholly unrelated to the accident in this case.

*Id.*

Zellers included the *Villagran* approach in summarizing the legal framework relevant

to direct negligence claims when agency has been admitted, noting that

> [o]nly when [the Federal Rule of Evidence 403] balancing test actually results
> in 'peripheral' or 'wholly unrelated' evidence against the company relative to
> the actions of the driver or the facts of the accident, then the danger of unfair
> prejudice would justify the dismissal of claims for negligent hiring, training,
> supervision, and entrustment.

2024 WL 1416503, at *4 (quotations omitted). Though the procedural posture in *Zellers* did

not require application of the balancing test, the plaintiff's motion to amend her complaint

was granted with the observation that "the court cannot see the futility of plaintiff's proposed

claims for negligent hiring, training, supervision, and retention" against the corporate

defendant. *Id.*

Here, there is no doubt that Plaintiffs' claim for direct negligence fails under the

widely-adopted rule that such a claim cannot proceed where agency is admitted and

punitive damages are not warranted.  The Court also concludes that, if the Court were to

apply the balancing test espoused in *Villagran* and *Zellers*, dismissal would still be warranted because Plaintiffs have not provided sufficient evidence for their claim of direct negligence against BEK to proceed.  Plaintiffs have not come forward with sufficient factual averments supporting the conclusory assertions originally set out in their Complaint.  (Doc. 1-2, ¶¶ 32(a)-(kk), 33(a)-(t)), 49(a)-(kk), 50(a)-(t)).  Moreover, viewing the summary judgment record in the light most favorable to the Plaintiffs, the Court has no basis to conclude that any of the alleged instances of reckless conduct, which are minimal, are relevant to the facts of this case or have causal and temporal nexus to the subject accident. Therefore, Plaintiffs' laundry lists of allegedly offensive and reckless conduct, lacking relevance, would not suffice as far as the balancing test of Rule 403 of the Federal Rules of Evidence were the Court to apply that test.  Accordingly, BEK's motion for partial summary judgment will be granted, and the Court will dismiss Counts II and IV to the extent they allege direct negligence claims against BEK.

## C. **Defendants' Motion for Partial Summary Judgment as to Punitive Damages**.

All Defendants move for partial summary judgment dismissing Plaintiffs' request for punitive damages.  (Doc. 30).  According to Defendants, Plaintiffs' request for punitive damages must be dismissed because they have failed to meet their burden to produce sufficient evidence that Defendants had a subjective appreciation that they were placing others at high risk of harm and acted, or failed to act, in conscious disregard of that risk.  (*Id.* at 12-21).  Plaintiffs oppose the motion.  (Doc. 40).

Because the Court has granted Kamuna's motion for summary judgment, it follows that the Court must dismiss the punitive damages claims against Kamuna. *See Fiedler v. Spencer*, 231 A.3d 831, 839 (Pa. Super. 2020) ("However, if no cause of action exists, then no independent action exists for a claim of punitive damage since punitive damages is only an element of damages."). Accordingly, the Court will grant Kamuna's partial motion for summary judgment and dismiss Plaintiffs' request for punitive damages.

The Court has granted summary judgment to BEK on Plaintiffs' direct negligence claims because no reasonable jury could impose punitive damages on BEK based on the summary judgment record. As discussed, BEK admits it is vicariously liable for the motor vehicle accident. "Pennsylvania law provides that punitive damages can be imposed on an employer based entirely on an employee's conduct, even without any direct evidence of misconduct by the employer." *Holder v. Suarez*, 2016 WL 593620, at *9 (M.D. Pa. Feb. 12, 2026). Under these circumstances, the employer "may be held vicariously liable for the punitive damages of its agent if the actions of the agents were clearly outrageous, were committed during and within the scope of the employee's duties, and were done with the intent to further the employer's interest." *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 101 (3d Cir. 1993); *see also Shiner v. Moriatry*, 706 A.2d 1228, 1240 (Pa. Super. 1998) ("Punitive damages may be awarded on the basis of vicarious liability.") (citations omitted). It is undisputed that, at the time of accident, Mr. Davranov was acting within the scope of his employment with BEK and furthering BEK's interest. The question thus

45

becomes whether Mr. Davranov's conduct was sufficiently outrageous or reckless to warrant the imposition of punitive damages against BEK and himself. The Court finds it was not.

While a defendant's "subjective appreciation of the risk of harm can be proven by circumstantial evidence," *Sabo v. Shank*, 2021 WL 9406784, at *3 (W.D. Pa. Aug. 19, 2021), there is insufficient record evidence for a reasonable jury to infer that BEK or Mr. Davranov had a subjective appreciation that they were placing others at high risk of harm and acted, or failed to act, in conscious disregard of that risk. *See Babenko v. Dillon*, 2019 WL 3548833, at *3 (E.D. Pa. Aug. 5, 2019) ("Allegations that Defendant did not comply with the law, by themselves, are insufficient to satisfy the requirements of Pennsylvania law for awarding punitive damages."); *see also Galovich*, 2024 WL 2962843, at *12 (dismissing punitive damages where Plaintiffs have not pointed to any evidence supporting driver's culpable state of mind at the time accident).

It is undisputed the on the day of accident it was daylight, the road surface was dry, and there were no adverse weather conditions. (Doc. 29, ¶¶ 2-3). The posted speed limit on Interstate 80 West in the area of the accident was 50 mph. (*Id.*, ¶ 4). Mr. Davranov's vehicle was traveling at an estimated speed of 50 mph at the time of the accident. (*Id.*, ¶ 8). As Mr. Davranov was attempting to merge from the left travel lane to the right travel lane, his vehicle struck Plaintiffs' vehicle, causing Plaintiffs to lose control of the vehicle and it struck a concrete barrier on the left side of the left travel lane. (*Id.*, ¶ 9). Mr. Davranov

46

testified that the accident occurred "due to his failure to see Plaintiffs' vehicle traveling next to his vehicle in the right lane in his blind spot at the time he was attempting to change lanes from left to right, resulting in an impact between the two vehicles." (*Id.*, ¶ 10). At the time of the accident, Mr. Davranov had a valid CDL. (*Id.*, ¶ 11). Mr. Davranov's CDL has never been suspended or revoked. (*Id.*, ¶ 12). Mr. Davranov testified that he was not using his cell phone at the time of the accident. (*Id.*, ¶ 13). Mr. Davranov "had no problems operating his truck due to the weather on the day of the accident." (*Id.*, ¶ 14). He further "had no mechanical problems with the truck on the day of the accident and he did not identify any issues with the truck at the time of his pre-trip inspection that day." (*Id.*, ¶ 15).

There is no evidence that Mr. Davranov was under the influence of drugs or alcohol. Indeed, it is undisputed that that investigating Pennsylvania State Police Trooper did not suspect Mr. Davranov of having used drugs or alcohol prior to the accident and his physical condition appeared normal. (*Id.*, ¶ 21). Nor is there any evidence that Mr. Davranov was on his cellular telephone at the time of accident. Although Plaintiffs speculate that Mr. Davranov was on the phone at the time of the accident since he kept his cellphone and Bluetooth in his truck while driving, Plaintiffs' speculation is not sufficient to create a genuine dispute as to whether Mr. Davranov "was actually using his cell phone at the time of the accident." *Felkner*, 2014 WL 1013474, at *2 n.6 (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("An inference based upon speculation or conjecture does not create a material factual dispute."). And there is no evidence that Mr. Davranov violated

47

hour-of-services regulations "by driving more than permitted during the days prior to the accident" or in general. *Achey*, 2009 WL 9083282, at *8. Accordingly, the Court will grant the Defendants' motion for partial summary and will dismiss Plaintiffs' claim for punitive damages.

## V.    CONCLUSION

For the foregoing reasons, Kamuna's motion for summary judgment will be granted in its entirety. BEK's motion for partial summary judgment will be granted and Kamuna's, BEK's and Mr. Davranov's partial motion for summary judgment on punitive damages will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge